UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

TERRENCE BOYD, Petitioner :

v. : CASE NO. 00-612ML

UNITED STATES OF AMERICA, Respondent. :

MOTION FOR RELIEF FROM JUDGMENT UNDER 28 U.S.C. § 1651 AND FEDERAL RULES OF CIVIL PROCEDURE, RULE 60(b)

Please take notice that upon the annexed declaration sworn on the 14th day of April, 2008 (and documents attached thereof), and upon the accusatory instrument and all other papers filed and proceedings had herein, Terrence Boyd hereinafter ("Petitioner") respectfully moves This Honorable Court of the District of Rhode Island at the Federal Building and U.S. Courthouse, Two Exchange Terrance, Providence, RI 02903 to address this motion on the 20th day of May 2008, and grant the relief that this Court deems Just and Proper.

Respectfully Submitted,

Terrence Boyd

Terrence Boyd, Pro-se
Reg. No. 04225-070
USP-Lewisburg
P.O. Box 1000
Lewisburg, PA 17837-1000

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TERRENCE BOYD,<br>Peititioner, | : | |
| v. | : | CASE NO. 00-612ML |
| UNITED STATES OF AMERICA,<br>Respondent. | : | |

# MEMORANDUM OF LAW

Comes Now Terrence Boyd, (hereinafter, "Petitioner") proceeding pro se, respectfully submits this memorandum of law in support of the instant motion for relief from judgment, under the All Writ Act of 28 U.S.C. § 1651. In the alternative, this Court should consider relief from judgment pursuant to the Federal Rules of Civil Procedure, Rule 60(b). In support thereof, Petitioner state the following:

## A. All Writs Act

The All Writs Act includes the writs of error coram nobis and audita querela. A motion under this section is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding. The procedure by motion in the case is now the accepted

American practice. United States v. Morgan, 364 U.S. 502, 506 n.4 (1954). In Morgan the Supreme Court held that the district court had power under the All Writs Act to issue a writ to vacate a conviction on the ground that the defendant had not been represented by counsel and had not competently and intelligently waived his constitutional right to counsel. The circumstances of the Petitioner's case justify the issuance of the writ, because Petitioner did not waived his constitutional right to a public trial.

B. Rule 60(b)

Federal Rules of civil procedure, Rule 60(b) which has been defined in Klopprott v. United States, 335 U.S. 601 (1949), "[P]ower in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."

The policy rational of Rule 60(b), connotes reopening the decree denying the initial section 2255 motion. Petitioner is not presenting new and /or additional claims for relief from the underlying convictions and sentences, he seek only to have the section 2255 court consider applying the correct standard of review. See, Gonzalez v. Crosby, 162 L.ED. 2d 480 (2005)(defects in the integrity of the Federal Habeas proceedings are clearly applicable on Rule 60(b) motion).

C. Suspension of Writ Clause

This Court has previously held that AEDPA's limitations on a prisoners's ability to bring habeas petitions may violate the Suspension of Writ Clause if they create an "unreasonable burden"

to habeas relief. Rodriquez v. Artuz, 990 F.Supp. 275, 282 (S.D.N.Y.), affd. at 161 F.3d 763, 724 (2nd Cir. 1998)(per Curiam).

Denial of habeas relief in the present case implicates the Suspension Clause because it constitutes a complete denial of any collateral review of new legal developments that arose after Petitioner filed his initial section 2255 petition in the year of 2003. Such a denial would be analogous to refusing to hear a claim that was erroneously dismissed under an erroneous analysis by the habeas court in a previous habeas petition. This would raise a serious constitutional question with respect to the Suspension Clause.

D. Preliminary Statement

In United States v. Tenzer, 213 F.3d 34, 39 (2nd Cir. 2000), the second Circuit held that it is appropriate to reconsider an earlier decision when confronted with "an intervening change of controlling law,... or the need to correct clear error or prevent manifest injustice." This legal reasoning is supported by Supreme Court precedent. In Davis v. United States, 417 U.S. 333, 342 (1974) the High Court held that the law of the case doctrine did not preclude a Petitioner from seeking § 2255 relief based on a change in the law that occurred after his conviction was affirmed on direct appeal. In Davis, the changed resulted from a decision of the Ninth Circuit, the same court that had affirmed Davis' conviction on direct appeal. The change in law occurred while Davis' certiorari petition was pending. The Supreme Court denied Certiorari in Davis' direct appeal, but granted review after the district court denied Davis' section 2255 petition. Id at 339-41.

In determining that Davis' habeas claims were not barred by the circuit court's decision on direct appeal, the Court stated that the result would be different had the change in law occurred while the defendant still had time to appeal his conviction but failed to do so. Id., at 345.

The circumstances in Davis are directly analogous to those here, insofar as the changes in law on which the Petitioner relies occurred after his conviction was final. It is clear from the Supreme Court grant of certiorari on Davis' post-conviction petition that reconsideration is necessary to prevent "manifest injustice" that results when a defendant is precluded from raising claims on collateral review when the law has changed. Thus, an exception is justified in this case because the application of new law is necessary to prevent a manifest injustice. See, Tenzer, 213 F.3d at 39.

E. Relevant Facts And Background

Petitioner was tried, along with others on various criminal charges stemming from the Petitioner's involvement in the providence, Rhode Island chapter of the("Latin Kings"). The Petitioner was convicted of one count of commission of a violent crime, murder, in the aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2. The Jury acquitted Petitioner on the remaining charges against him, including single counts of violation of 18 U.S.C. § 1962(c) (racketeering) and 18 U.S.C. § 1962(d) (Conspiracy to commit racketeering); and two counts of violation of 18 U.S.C. § 1959(a)(5)(Conspiring to commit murder, in aid of racketeering).

Petitioner's conviction resulted from his participation in the murder of Jose Mendez. Petitioner was not physically present during Mendez' murder, he was alleged to actively participated in its planning. Petitioner was sentenced to a term of life imprisonment without the possiblity of parole. Petitioner's conviction was affirmed on appeal in United States v. Lara, 181 F.3d 183 (1st. Cir. 1999), Cert. denied, 528 U.S. 1098 (200). All Post-convictions motions filed by the Petitioner were denied.

Relevant here, in Petitioner's habeas corpus pursuant 28 U.S.C. § 2255 he claimed that both his trial and appellate counsel were defficient in failing to challenge the restrictions imposed by the Court on courtroom traffic during jury selection and trial. Specifically, Petitioner complains that the Court's limitations or spectator ingress and egress while Court was in session amounted to an unconstitutional partial closure of the Courtroom in denial of his Sixth Amendment right to a public trial.

The thereshold issue was whether the preclusion of courtroom traffic while the Court was in session amounted to a "closure" implicating the right to a public trial. In support this claim Petitioner submitted an affidavit executed by his foster mother that wanted to show family support at his trial, Arlean Horton. Ms. Horton averred that during jury selection and on several occasions during trial she was denied access to the courtroom.

Notable, at that time this court had not address whether the proclusion of courtroom ingress and egress while the court is in session amounts to a "closure" for Sixth Amendment purposes. See,

United States v. Deluca, 137 F.3d 24 (1st. Cir. 1998)(acknowledging question but finding it unnecessary to decide whether spectator screening procedure amounted to a Sixth Amendment closure since procedure amounted, at most, to a constitutionally permissible partial closure).

Discussion

A criminal defendnat has a constitutional right to insist on a public trial. The explicit language of The sixth Amendment guarantees every criminal defendant a speedy and "public trial". U.S. Constitution, Amendment VI. ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial,...").
Id.

> "[T]he public-Trial guarantee embodies a view of human nature, true as a general rule, that Judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in open court than in secert proceedings".

Estes v. Texas, 381 U.S. 532, 588 (1951).

Here, the trial lasted for forty-four days. Petitioner was facing serious crimes and a mandatory life sentence without parole. During the trial proceedings, the Court without developing a record closed the courtroom everytime the Judge took the bench.

In Waller v. georgia, 467 U.S. 39, 45 (1984), The Supreme Court identified four requirements, important though not particularly onerous, that must be met before public access to a criminal proceeding may be denied:

1) The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced,

2) The closure must be no broader than necessary to protect that interest,

3) The Trial Court must consider reasonable alternatives to closing the proceedings, and

4) It must make finding adequate to support the closure.

Id.

In the case at bar, The Court failed to meet these requirements. Moreover, its actions resulted in the Petitioner's relatives (family support) being excluded from the trial proceedings. See Waller, 467 at 49-50("... The Trial Court's partial closure of its courtroom was not accomplished in conformity with constitutional requirements. The exclusion of courtroom observers, especially a defendant's family members and friends, even from part of a criminal trial, is not a step to be taken lightly..."). Id. The Supreme Court has specifically noted a special concern for assuring the attendance of family members of the accused. See, In re oliver, 333 U.S. 257, 271-72, n.8 (1948).

Furthermore, in such a case a defendant would not be required to show any projudice. "It is well settled that a defendant whose right to a public trial has been violated need not show that he suffered any prejudice, and the doctrine of harmless error does not apply" Waller, 467 U.S. at 49-50.

In its memorandum and order denying Petitioner's motion pursuant to 28 U.S.C. § 2255, the District Court explained that "security considerations" and an "effort to limit interreptions and minimize distractions to defendants, witnesses and counsel and members of the jury during the proceedings" were the reasons for restricting the times during which the public could enter and exit the courtroom. (Notable, This explanation is not supported by the trial records). The Court also noted, that "given the number of defendant and, consequently the large numbers spectators at the trial, this explanation constitutes a substantial reason justifying the restriction". (See, petition for rehearing 7/10/02). More importantly, The Court noted that "this circuit has yet to rule on the issue". Id.

In denying Petitioner's § 2255 motion the court relied upon the district court's post-hoc construction of events to support it's closure rule. This post hoc rational is essentially equivalent to the post-hoc assertions rejected in Waller, 467 U.S. at 49 N.8 ("[T]he post hoc assertion... Cannot satisfy the deficiencies in the trial court's record").

Nevertheless, recently this court in Owens v. United States, 483 F.3d 48 (1st. Cir. 2007) uprooted any principle that a defendant in Petitioner's situation was not entitled to an evidentiary hearing on his Sixth Amendment contention that the closure of the courtrrom during trial violated his right to a public trial. Id at 66. Members of Owens family submitted affidavits (as in Petitioner case) stating that uniformed officers prevented them

from entering the courtroom during the first day of jury selection in Owens' trial. Id at 61. As in Petitioner's case, the Owens court declined to conduct an evidentiary hearing Id. Further, the District Court concluded that Owens was not entitled to relief even taking his allegations as true. Specifically, The District Court concluded that trial closure was not sufficiently prejudicial to warrant relief. Further, The district court noted that Owens, had procedurally defaulted this claim, and found that Owens could show neither "cause" nor "prejudice" to excuse to default.

The Owens court made clear that trial closure are to be "rare and only for cause shown that outweighs the value of openness" Owens, 483 F.3d at 61, citing Press-Enterprise, 464 US at 509 and Waller, 467 U.S. at 47 In particular, a court must consider (and reject) alternative to closure before barring public access. Press-Enterprise, 464 U.S. at 511. "To our knowledge, a trial closure has not yet been justified on the basis of convenience to the court." Owens 483 F.3d at 62. In short, as in Owens if the closure alleged by [Petitioner] did occur, the court was obligated to consider an alternative. Press-Enterprise, 464 U.S. at 511; Owens, 483 F.3d at 62. ("Given the strong interst courts have in providing public access to trials, the district court could have considered whether a larger courtroom was available for jury selection") Id. In the case at bar, the record shows no such consideration was given.

In Owens the courtroom was closed to the public for an entire day (here, a partial closure for 44 days), as in Owens on the

record without the benefit of an evidentiary hearing this court should not said how the failure to object to the partial closure for 44 days could have been sound trial strategy where Petitioner did not have his family support at trial. Id at 64. ("We conclude the Owens' counsel may have been ineffective in failing to object to the closure of jury selection to the public.")

In sum, the section 2255 court's application of the wrong analysis (with the guidance of Owens) was a defect in the integrity of The Federal habeas corpus proceedings that warrants reconsideration in this matter.

The Retroactivity of Owens

No lengthy analysis is needed to determine whether Owens, is to be applied retroactively. The Supreme Court has had occasion to visit this issue ruling in the context of another defendant proceeding to trial without the right to a public trial. Waller v. Georgia, 467 U.S. 39, 46 (1984) holding, a defendant has a right to a trial that is open to members of the public. Id at 46. The guarantee of a public trial is, for the benefit of the defendant; a trial is far more likely to be fair when the watchful eye of the public is present.

In the case at bar, Petitioner was convicted without enjoying of a public trial. Believies habeas corpus was not an available remedy, the section 2255 court and did not give Petitioner the benefits of an evidentiary hearing.

Evidentiary hearing is necessary

"A fundamental requirement of due process is the opportunity to be heard," it is an opportunity that must be granted in a meaningful time and in a meaningful manner. Armstrong v. Manzo, 380 U.S. 545 (1965) because a federal priosner gets only one "bite" from the section 2255 "apple" he should be given an meaningful opportunity to be heard. Id.

As in Owens, supra., Petitioner is entitled to an evidentiary hearing concerning the facts behind the closure of his trial. In Owens the courtroom was closed to the public for an entire day. Here, there was partial closure for 44 days to the public and a entire closure to Petitioner's family members and friends Cf., United States v. Keaveny, 1999 WL 525954, at* 1-2 (1st Cir. 1999)("[C]onstitutional concern may be raised even by a court officer's unauthorized partial exclusion of the public"). In sum, here Petitioner raised serious constitutional questions about both the reality and appearnace of fairness in his trial. This allegation set-forth in his § 2255 motion and COA is serious and at this stage, is sufficiently supported by his § 2255 record.

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records." This allegation require an evidentiary hearing under well settled law. United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files

and trial record "conclusively show" Petitioner entitled to no relief); United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000)(petitioner entitled to evidentiary hearing when motion presented colorable claim and unclear whether counter affidavit disputed defendant's allegations); Nichols v. United States, 75 F.3d 1137, 1145-46 (7th Cir. 1996)(Petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue). Based on all of the foregoing, the Petitioner respectfully requests This Honorable Court to order an evidentiary hearing where he can prove his case.

## CONCLUSION

New legal developments set-forth herein suggest a colorable claim compelling reopening the original § 2255 proceedings. The law case doctrine does not preclude reconsideration in a second appeal of claim rejected in earlier appeal but strengthened by intervening legal changes. Davis, 417 U.S. at 341-42. Thus, relief is proper in this case because the application of new law is necessary to prevent a manifest injustice.

Respectfully Submitted,

Terrance Boyd

Terrence Boyd, Pro-se

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the instant motion for relief of judgment pursuant to 28 U.S.C. § 1651 and Federal Rules of Civil proceedure, rule 60(b), by desposit-ing the contents thereof in the institutional legal mailing system, in a properly addressed envelope to ensure delivery First Class mail to the office of The U.S. Attorney for the Rhode Island.

So said and done this April 10th, 2008

Terrance Boyd

Terrence Boyd, Pro-se